## STATE OF VERMONT

## ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| **Clermont Terrace Site Plan and** | } | **Docket Nos. 46-2-05 Vtec** |
| **Zoning Permit Approvals** | } | **72-4-05 Vtec** |
| **(Appeal of Curtis)** | } | |
| | } | |

### Decision and Order on Appellant's Motion for Summary Judgment

Clark W. Curtis appeals from the decisions of the City of Newport (City) Planning Commission (Docket No. 46-2-05 Vtec) and City Zoning Board of Adjustment (ZBA) (Docket No. 72-4-05 Vtec) granting Appellee-Applicants Michael and Chieko Coutu's application for site plan and zoning approval to place fill in or near their current driveway to prevent water from further seeping into the basement of their single-family dwelling at 170 Clermont Terrace. Appellant and Appellee-Applicants represent themselves. The City appeared as an interested person through its Zoning Administrator Bob Kelly but did not participate in the briefing of this matter.

Appellant filed a motion to have both of the pending appeals consolidated. No party filed an opposition to this motion. That motion is hereby **GRANTED**.

The remaining motion pending before the Court is Appellant's motion for summary judgment. Appellee-Applicants (hereinafter alternatively referred to as "Applicants" or "Coutus") have filed memoranda in opposition to the pending motion. The pending motion seeks summary judgment on almost all of the issues presented[1] in Appellant's Statement of Questions, which are summarized as follows:

a. Must Applicants be the owner of record of all property upon which they intend to place improvements?

---

[1] Several of Appellant's Questions ask whether the action taken by the Planning Commission was in "error." Because this appeal is "de novo," and not "on-the-record," we do not review the propriety of the Commission's decision, but rather review the application anew. Appellant's Questions asserting improper notice are discussed below. See infra. p. 8.

1

b. Do Applicants carry the burden of proving that they have lawful authority to place improvements on the subject property?

c. Can Applicants satisfy the Ordinance's requirements for site plan and zoning approval to place fill on the subject driveway?

## Factual Background

The following facts are undisputed unless otherwise noted:

1. Applicants own a rectangular, 83' x 100', 0.2-acre parcel of land in the City's Urban Residential zoning district, improved with a single-family dwelling. The parcel is located at 170 Clermont Terrace, immediately to the east of the St. Mary's Star of the Sea Catholic Church, owned by the Roman Catholic Diocese of Burlington and operated by St. Mary's Catholic Church Parrish (hereinafter collectively referred to as St. Mary's Church). Applicants purchased this property in 1991.

2. Applicants' current driveway is located to the south of their house and is accessed by driving through a parking lot in the rear of the Church. The right-of-way through the parking lot serving both the Church and Applicants' property is also known as Clermont Terrace right-of-way, which is a private right-of-way extending from a town roadway known as Clermont Terrace.

3. The Coutus concede that they do not hold title by way of a recorded deed or easement to all the land upon which they intend to construct their driveway improvements. They contend that they and their predecessors in title (including Mr. Coutu's family members) have used their current driveway since at least 1945 with permission of St. Mary's Church. Applicants assert that St. Mary's Church owns the subject property.

4. Appellant disputes the ownership of the land upon which Applicants' driveway is situated. Appellant does not dispute that the Coutus and their predecessor in title have used the current driveway since at least 1945. Appellant does dispute, however, that the Church owns this land and has authority to give permission to others to use it.

2

5.    Applicants gave some further background regarding their driveway configuration, which is apparently undisputed by Appellant:

   a. Applicants' house was originally accessed by a driveway that turned northerly between the house and the neighboring church and then intersected with Prospect Street.

   b. At some point in 1974, the Church and the City asked that the former driveway extending to Prospect Street be removed because it created a hazardous traffic situation, due to its proximity to a curve on Prospect Street to the east and the access to the Church parking lot to the west, via Clermont Terrace.

   c. The driveway extension to Prospect Street was then eliminated by adding topsoil and seeding, creating a front and side lawn for Applicants' house. Mr. Coutu represented that, as a high school student in 1974, he did some of this topsoil and seeding work.

   d. The elimination of the driveway was done at the request of and with permission from St. Mary's Church. The driveway as it exists now runs from the paved portion of the Church's parking lot[2] and consists of dirt or gravel behind (i.e.: south of) Applicants' house.

6.    Applicants claim that the property upon which they intend to construct their driveway improvements is either theirs or the Church's, which has authorized their use of and improvements to the driveway. In response, Appellant claims that he has obtained title to the subject property, by way of adverse possession, including his claims of occupancy and maintenance. Both parties concede that neither has instituted a proper action to quiet title to the subject property in Superior Court.

7.    Applicants' rectangular property shares its easterly border with the .23-acre parcel owned by Stephanie Rosamelia. Raymond Avenue acts as Ms. Rosamelia's easterly lot line. South of the Rosamelia property, Raymond Avenue makes a bend to the west, which forms the southeasterly corner of Appellant's lot. Appellant's 0.8-acre parcel is located to the west of that bend. While Appellant's deeded property abuts

---

[2] It is unclear from the evidence presented whether this paved portion of the Church parking lot is part of Clermont Terrace or the private Clermont Terrace right-of-way.

neither Applicants' nor Rosamelia's deeded property, his property is only a short uphill walk southeasterly from Applicants' parcel.

8. According to a survey presented by Appellant, the land between his northerly property line and Applicants' southerly border is of disputed ownership. This survey represents that the distance from Applicants' home to their southerly lot line is only 6 feet, 9 inches. This southerly portion of their property includes at least part of the driveway that they intend to fill. From their southerly lot line to Appellant's northerly lot line, a strip of land, approximately 37 feet wide north-to-south,[3] contains the remainder of Appellant's driveway and is of disputed ownership.

9. Both parties make a less-than-clear reference to "Tuck Street" or "Tuck Road," which allegedly appears to have once been located in the area where Applicants' driveway is now located. The parties appear to dispute the location and existence of this public or private road.

9. Appellant claims that he has occupied and maintained the disputed property to the north of his northerly property line for at least eighteen years, and therefore that it has merged with his deeded property through adverse possession.

10. On December 10, 2004, the Coutus submitted their application for a zoning permit for "raising the level of the driveway." The Zoning Administrator determined that site plan review was required for this project, which was later granted by the Planning Commission on February 1, 2005, after a public hearing on January 4th.

11. On February 2, 2005, the Zoning Administrator granted Applicants' zoning permit request, with conditions that were enumerated in a January 18, 2005 letter from the Director of Public Works. Those five conditions required:

1. restoring the vegetation surrounding the driveway if it is disturbed by the fill placement;

---

[3] This distance was measured by scale from Appellant's boundary line survey in evidence. Based on the two inch length of Appellee-Applicants' 100-foot-long property line, the Court presumed the survey had a scale of 1 inch = 50 feet. The Court then approximated all distances not specified on Appellant's survey.

2. managing and storing the fill so as not to interfere with the property rights of neighbors;

3. controlling any additional runoff to avoid problems with the City's storm drains, adjoining properties, and nearby Lake Memphremagog;

4. using fill suitable for vehicular traffic; and

5. insuring that all property to be filled is within Applicants' lot, or that Applicants have permission from the necessary adjoining landowner(s).

12. Appellant does not appear to contest the Planning Commission's specific site plan findings regarding adequacy of (1) traffic access; (2) circulation and parking; (3) landscaping and screening; (4) renewal energy resources; or (5) compliance with pertinent Bylaw provisions. See Bylaws § 606.02.

13. On February 24, 2005, Appellant filed a timely appeal of the Planning Commission's grant of site plan approval to this Court.

14. On April 5, 2005, Appellant also filed a timely appeal from the March 16, 2005 ZBA decision upholding the Zoning Administrator's grant of a zoning permit.

## Discussion

The primary issue Appellant raises in this appeal and his pending motion concerns the ownership of the subject property. Appellant first suggests that the pending applications cannot be approved, since the Applicants concede that they do not hold title in the form of a recorded deed to all of the property upon which they intend to place fill for the improvement of their driveway. On this first issue, we decline to adopt Appellant's suggestion.

Applications for municipal permits to develop property are often filed by individuals who do not hold record title to the subject property. This Court has stated that, "[u]nlike the rules applicable to Act 250 permit applications, nothing in the state zoning law [24 V.S.A. § 4449] . . . requires that the owner of the underlying land be an applicant for a zoning permit." In re: Appeal of O'Rear, et al., Docket No. 2-1-00 Vtec,

slip op. at 3–4 (Vt. Envtl. Ct., May 15, 2001). Sometimes, applications are filed by individuals who first wish to obtain the necessary permits before they purchase the subject property. To bar such applications would frustrate the necessary due diligence that buyers often must conduct before making the considerable investment now required to purchase real estate.

Another frequent example is much like the applications now pending in these appeals: the access for a residential property runs in part over the property of another. To receive approval for such access, or improvements thereto, the homeowner must apply for a permit to make improvements on property that they do not own. The most often scenario in such cases is for the homeowner to acquire an easement or some other form of authority from the adjacent property owner to make the necessary driveway improvements. Appellant's first suggestion would require appropriate municipal panels to deny such driveway application, solely on the basis that the applicant does not hold record title to all property proposed for development. Appellant has not cited any authority in the Bylaws or applicable statutes that would justify such a draconian result. We decline to so rule.

We note, however, that Appellant correctly points out that it is Applicants' burden to show that they have title or some other authority to develop the subject property as proposed. Inquiry on this threshold burden and whether an applicant has met it must be balanced with this Court's jurisdictional limitations. We have commented on this delicate balance in a number of previous appeals, including <u>Appeal of Monty</u>, Docket Nos. 7-1-04 Vtec and 47-3-04 Vtec (Vt. Envtl. Ct., Jan. 24, 2006); <u>Appeal of Van Nostrand</u>, Docket Nos. 209-11-04 Vtec and 101-5-05 Vtec (Vt. Envtl. Ct., Jan. 13, 2006); <u>Appeal of Cole</u>, Docket Nos. 174-10-01 Vtec and 47-3-04 Vtec (Vt. Envtl. Ct., May 2, 2003); and <u>Appeal of Bowman</u>, Docket No. 70-5-96 Vtec (Vt. Envtl. Ct., June. 21, 2005). While our Supreme Court has not specifically addressed this topic, this Court has repeatedly held that once an applicant has put forth some evidence on "their

interest and right in the property . . . proposed [for] development[, any] further claims to title, or claims attacking the same, must be presented to the appropriate Superior Court for adjudication." Monty, slip op. at 6-7 (quoting Van Nostrand, slip op. at 9).

In the appeal at bar, the uncontested evidence is that Applicants and their predecessors in title have used the land upon which their driveway access is located since at least 1945. This land was last improved sometime in 1974, when the predecessors in title accommodated requests from the City of Newport and St. Mary's Church to modify the driveway, due to safety concerns. It is also undisputed that St. Mary's Church was at that time purported to be the owner of the land in question. While the customary current practice is to obtain a written easement or license for such a driveway arrangement, and to record the same in the City land records, the lack of a writing does not cause the other undisputed evidence to evaporate. Also of particular interest to the Court is the absence of any recorded deed that vests Appellant with title to the disputed property and the absence of any evidence that Appellant transmitted his claims of adverse possession to Applicants or St. Mary's Church at any time prior to the filing of the applications at issue in these appeals.

Appellant alleges that Applicants do not own the land upon which they propose to place fill for the improvement of their driveway and that they therefore are not entitled to the requested zoning permit and site plan approval. Appellant's allegation of lack of ownership may have merit, but it is intertwined with Appellant's own claims of ownership over some of the land that Applicants propose to fill. To the extent Appellant is challenging the Coutus' ownership of the piece of property southerly of their lot or alleging that he has a claim to this parcel under the doctrine of adverse possession, it is not within the scope of this proceeding, nor is it within the jurisdiction of this Court to determine competing private property rights. Such actions must be brought in Superior Court, as noted in the prior decisions cited above. See also Appeal of Yates and Leete, Docket No. 158-9-04 Vtec, slip op. at 3 (Vt. Envtl. Ct., May 4, 2005).

Appellant clarified that he does not object to Applicants placing fill on their own property. We agree, and see no reason that placing fill within the boundaries of their 83′ x 100′ parcel violates the City's Zoning Bylaws or the site plan review criteria in Bylaws §§ 606.02 and 606.03. However, because Applicants' proposed placement of fill may impact the amount of runoff or water flowing over City's roads and into the City's storm drains, this Court, like the Planning Commission below, will require Applicants to seek prior written approval (i.e.: prior to any work) from the City Director of Public Works as to both the type of fill used and the proper placement of fill. Moreover, Applicants must comply with any specific conditions imposed by the Director of Public Works.

Applicants also propose placing fill upon property for which they concede that they do not hold record title. Again, we leave the resolution of the parties' apparent title dispute to a court that has jurisdiction to hear such claims. If any party wishes to assert or challenge title to the subject parcel, they must do so by bringing an action in Superior Court. As previously stated, this Court does not have jurisdiction to determine private property rights.

We note that in Docket No. 72-4-05 Vtec, Appellant asserts in Questions 4, 5, 7, and 8, that "one or more adjoiners" did not receive notice of the proceedings below and that such notice may be defective. We are unaware of the specific factual foundation of these assertions, as they were not briefed by Appellant, but we are concerned by them, as they may undermine this Court's jurisdictional authority to render final decisions on the applications now under appeal. We therefore direct Appellant to provide the specific factual foundation for these assertions within the next thirty (30) days (i.e.: on or before Friday, April 21, 2006). If Appellant fails to do so, or if we determine that Appellant's filing provides an insufficient factual foundation, a final judgment will be rendered dismissing his appeals.

The consequence of our analysis here is that we specifically find that the facts presented, even when viewed in a light most favorable to Appellant, lead to a conclusion that Applicants have submitted sufficient evidence that they have met their threshold burden of an interest in the subject property.  Further, given that Appellant has not raised any specific challenge in his Statement of Questions to the Planning Commission site plan review findings rendered pursuant to Bylaws § 606.02, as implemented in accordance with 24 V.S.A. § 4416, we **GRANT** Applicants' requests for site plan approval and zoning permit, subject only to the conditions referenced above and Appellant's right to submit sufficient evidence within thirty (30) days as to the notice questions raised in his Statement of Questions submitted in Docket No. 74-2-05 Vtec.  We reserve determination on a final judgment until after Appellant's opportunity to submit such evidence has expired.

The Court is entering summary judgment against Appellant and in favor of Applicants.  While Applicants chose not to file a motion for summary judgment, V.R.C.P. 56(c)(3) authorizes this Court, "when appropriate" to render summary judgment "against the moving party."  We conclude that summary judgment for Applicants is appropriate here, subject to the conditions noted above.

Accordingly, based on the foregoing, it is hereby **ORDERED** and **ADJUDGED** that Appellant's motion for summary judgment is **DENIED**.  Summary judgment is entered in favor of Applicants.  The Court will reserve a determination on the entry of final judgment until after April 21, 2006.

Done at Berlin, Vermont, this 22nd day of March, 2006.

_____
Thomas S. Durkin, Environmental Judge

9